**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-20861-COOKE/DAMIAN

ADEISLEM HERNANDEZ,

      Plaintiff,

vs.

WALMART STORES, INC.,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S MOTION TO EXCLUDE**
**DEFENDANT'S EXPERT DR. KENNETH JAROLEM [ECF NO. 29]**

THIS CAUSE is before the Court on Plaintiff, Adeislem Hernandez's ("Plaintiff" or "Ms. Hernandez"), Motion to Exclude Defendant's Expert, Kenneth Jarolem, M.D. ("Dr. Jarolem"), from testifying in this case [ECF No. 29] (the "Motion"). This matter was referred to the undersigned for a Report and Recommendation by the Honorable Marcia G. Cooke, United States District Judge. [ECF No. 32]. *See* 28 U.S.C. § 636.

The undersigned has considered the Motion, the Response [ECF No. 30], the Reply [ECF No. 31], and Defendant's Supplemental Memorandum [ECF No. 39], as well as the documents submitted in support of the parties' filings, including Defendant's Expert Witness Disclosure [ECF No. 29-1], the Expert Reports [ECF Nos. 29-2, 30-3], the deposition transcript of Dr. Jarolem [ECF No. 31-1], the pertinent portions of the record, and all relevant authorities. The undersigned also heard from the parties at a hearing on the Motion on April 19, 2022. For the following reasons, it is recommended that Plaintiff's Motion to Exclude Defendant's Expert [ECF No. 29] be denied.

## I.      BACKGROUND

This negligence action arises from a slip-and-fall at a Walmart store in South Florida. On August 6, 2019, Ms. Hernandez was a business invitee at the Walmart store located at 33501 South Dixie Highway in Florida City, Florida. *See* ECF No. 1-1 (the "Complaint"), at ¶ 5. Ms. Hernandez alleges that while walking in the store, she slipped and fell on an unknown, clear liquid substance on the floor, believed to be water, causing her to sustain serious and permanent injuries. *Id.* ¶ 7. Ms. Hernandez filed a one-count Complaint for negligence against Walmart in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, in December 2020. *See id.* at 2–4. On March 3, 2021, Walmart removed the action to this Court. *See* Complaint, at ¶ 10.

On August 24, 2021, the Court entered an Order Setting Civil Trial Date and Pretrial Deadlines (hereinafter, "Scheduling Order"). *See* ECF No. 6. Pursuant to the Scheduling Order, Defendant was required to furnish Plaintiff with an expert witness list, along with the summaries and reports required under Federal Rule of Civil Procedure 26(a)(2), by November 17, 2021, and "only those expert witnesses will be permitted to testify." *Id.* at 2. All expert discovery was to be complete by December 1, 2021. *Id.* The Scheduling Order is silent regarding the deadline for supplementing expert disclosures and reports.

On November 17, 2021, the day Defendant's expert witness disclosures were due, Defendant disclosed Dr. Jarolem as its only expert witness along with the following summary:

> Dr. Jarolem is a board-certified orthopedic surgeon. Dr. Jarolem is expected to testify as an expert based upon his education, knowledge and experience and his examination of the Plaintiff as well as Plaintiff's medical records and films, pre and post incident and medical bills. Dr. Jarolem is expected to opine as to: whether Plaintiff sustained any injury which was casually [*sic*] related to the alleged incident; whether the medical treatment undergone by Plaintiff was casually [*sic*] related to the alleged incident and medically necessary; the reasonableness of the medical charges; the reasonableness of the treatment; future medicals that may be casually [*sic*]

2

related to the alleged incident, if any; and whether Plaintiff requires any future medical care or treatment that is casually [*sic*] related to the alleged incident.

[ECF No. 29-1]. Defendant served its expert witness list together with two Preliminary Reports from Dr. Jarolem, dated July 22, 2021, and November 16, 2021, [ECF Nos. 30-1; 30-2] (collectively referred to as the "Preliminary Reports").[1] Thereafter, Defendant provided three Supplemental Reports from Dr. Jarolem, dated: November 24, 2021; December 1, 2021; and January 25, 2022, [ECF Nos. 29-2; 30-3] (collectively referred to as the "Supplemental Reports").

On December 15, 2021, Defendant filed a Motion for Summary Judgment. [ECF No. 22]. And, on January 26, 2022, Plaintiff filed the Motion now before the Court seeking to exclude the testimony of Dr. Jarolem pursuant to Federal Rules of Civil Procedure 26 and 37, and alternatively, Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [ECF No. 29]. Defendant's Motion for Summary Judgment is now ripe, discovery is closed, and this case is set for trial during the trial period beginning May 23, 2022. *See* ECF No. 6.

## II.    THE EXPORT REPORTS AT ISSUE

Plaintiff seeks to exclude Dr. Jarolem's testimony based on five Expert Reports prepared by Dr. Jarolem. The first two Preliminary Reports, dated July 22, 2021, and November 16, 2021, were submitted before the Rule 26(a) disclosures deadline set by the Court's Scheduling Order. [ECF No. 29-2, at 4–12]. In these Preliminary Reports, Dr.

---

[1] Plaintiff also indicates that Dr. Jarolem's Reports do not comply with the requirements of Federal Rule of Civil Procedure 26. The undersigned confirmed at the hearing on April 19, 2022, that the alleged shortcomings were not technical (*i.e.*, failure to provide CV, prior testimony, or billing rates) but, rather, were based on the alleged failure to provide bases for the opinions given.

Jarolem summarized Plaintiff's medical history prior to the incident, described his findings after a physical examination of Plaintiff, and opined as to the medical treatment received by Plaintiff after the incident and the reasonableness of medical charges. More specifically, Dr. Jarolem opined that there was no indication for injections done and that amounts charged for various treatments and procedures were out of the realm of usual and customary among other observations. [ECF No. 29-2]. In both Preliminary Reports, Dr. Jarolem identified numerous medical records and reports he reviewed and indicated that he was requesting additional information to review "prior to finalizing [his] opinions," including medical records from Plaintiff's past treating physicians.[2] Notably, in these two Preliminary Reports, Dr. Jarolem did not provide an opinion on Plaintiff's medical condition or her injury as a result of the alleged slip-and-fall incident.

On November 24, 2021, one week after the Court's Rule 26(a) disclosures deadline (and one week before Dr. Jarolem's scheduled deposition), Defendant served Plaintiff with Dr. Jarolem's first supplemental report [ECF No. 29-2, at 1–3] (the "November 24, 2021 Report"). In the November 24, 2021 Report, Dr. Jarolem noted: "A request was made to

---

[2] Specifically, in both Preliminary Reports, Dr. Jarolem requested the following additional information to finalize his opinions:
1) Medical records from Dr. Robert Jacobson (per the note of Dr. Ponce de Leon 10/12/20);
2) The operative report from the "radiofrequency ablation at L4-5", as well as the fluoroscopy images from that procedure (per the note of Dr. Ponce de Leon 10/12/20);
3) Medical records from the physician prescribing prednisone (per the medication list 11/17/20);
4) A full set of records from Dr. Ponce de Leon, to include the operative report (per the note 2/11/21 from Dr. Joyce);
5) Lumbar MRI dated 4/21/15 from High-Field MRI of Miami-Dade;
6) Lumbar and cervical MRIs dated 10/10/19 from CMI; and
7) All pharmacy ledgers for the claimant.
[ECF No. 29-2, at 5, 11].

finalize the report and no additional records are expected before the deposition on December

1." *Id.* at 2. Dr. Jarolem gave the following opinions, for the first time:

- There is no permanent injury as a result of the accident on 8/6/19;

- There is no impairment rating, there are no restrictions and no further treatment is necessary to Ms. Hernandez as a result of the accident of 8/6/19;

- Any issues with Plaintiff's lumbar spine are not the result of the 8/16/19 accident. The lumbar spine showed substantial degeneration that clearly predates the accident on 8/6/19;

- There was no indication for any invasive procedures whatsoever as a result of the accident of 8/6/19; and

- There was a "substantial discrepancy" regarding Plaintiff's substantive pain complaints and Plaintiff's treating physician, Dr. Roush's, notes regarding Plaintiff's complaints.

*Id.* At the end of his November 24, 2021 Report, Dr. Jarolem noted: "I have asked for the

MRI scans of the cervical and lumbar spine dated 10/10/19 from CMI. I have been told that

these scans are not retrievable. If at some point the images become available, I would like to

review those studies for completeness." *Id.* at 3.

On December 1, 2021, Dr. Jarolem appeared for his deposition. [*See* ECF No. 31-1].

The morning of the deposition, and two weeks after the Rule 26(a) disclosures deadline set

by the Court's Scheduling Order, Defendant served Plaintiff with Dr. Jarolem's second

supplemental report [ECF No. 29-2, at 13–19] (the "December 1, 2021 Report"). In the

December 1, 2021 Report, Dr. Jarolem noted as follows:

> In preparation for the deposition, my reports were reviewed. I realize that the time line regarding the opinions by Dr. Roush was incorrect in my previous report leading to this correction. This report will supersede previous reports and includes a correction regarding the issues with Dr. Roush as the treatment with Dr. Roush was prior to the accident of 8/6/19.

*Id.* at 13. During his deposition, Dr. Jarolem confirmed that the December 1, 2021 Report was made to correct a mistake in the previous reports, as explained below, but that his opinions had not changed from the previous November 24, 2021 Report. He explained:

> **Q. The reports that I received today, the initial paragraph says you reviewed reports and you realized that there is a timeline regarding opinions by Dr. Roush was incorrect. What was incorrect about the prior reports that this December 1st one corrected?**
>
> A. Okay, so basically in the report before I discussed Dr. Roush's records as if they – his treatment occurred after 8/6/2019, but I caught that mistake when I was reviewing the records that Roush actually treated her for a prior accident.
>
> **Q. Is that the only correction in your December 1st report?**
>
> A. That's the only correction. But in the December 1st report, because of the mistake, I basically superseded all of the previous reports, and merged all of the information I had, so the history the physical, every radiographic study, every medical record was put into the note 12/1/2021, and all opinions are in that note. So, that note can stand on its – can stand on its own for all of my opinions and all of my review.
>
> **Q. So, for the December 1st record, did you review any additional materials from the November 24th report and the December 1st [*sic* - July 22nd] report?**
>
> A. No, it was all the same, I just noticed that I made a mistake about the timeline with regard to the treatment of Dr. Roush, that there was no new information.
>
> . . . Give me one second. Okay, I misspoke, and the report of December 1st 2021, can't just stand on its alone – can't stand on its own. There were opinions provided in the previous reports that were not put in the report of December 1st, of today's report.

*See* ECF No. 31-1, at 3.

In the December 1, 2021 Report, Dr. Jarolem offers the exact same opinions[3] given in the previous report one week earlier (*i.e.*, the November 24, 2021 Report). [ECF. No. 29-2, at 5–6]. Dr. Jarolem also offers several additional statements not previously made in earlier Reports:

---

[3] The undersigned notes that the December 1, 2021 Report appears to contain the same error (or put differently, does not correct the error) regarding the timing of Plaintiff's treatment by Dr. Roush. *See* ECF No. 29-2, at 17.

- Clearly the structural abnormalities shown in the MRI report subsequent to the accident of 8/6/19 predate the accident of 8/6/19 and were symptomatic;

- There is nothing in the medical records that would lead to a conclusion that herniated discs occurred as a result of the slip and fall;

- The slip and fall was described as a fall onto the buttocks with initial complaints of right leg pain. Clearly these issues are inconsistent with the structural injury to the cervical spine as a result of the accident of 8/6/19;

- None of the abnormalities seen in Plaintiff's x-ray and MRI are a result of the accident of 8/6/19 but a result of a preexisting condition; and

- The sacralization of L5 is the cause of her abnormalities at the L4-5 disc level . . . . This is a sign of substantial degeneration that clearly predates the accident on 8/6/19.

[ECF No. 29, at 6].

Finally, on January 25, 2022, two weeks after Dr. Jarolem's deposition, Defendant served Plaintiff with Dr. Jarolem's third supplemental report [ECF No. 30-3] (the "January 25, 2022 Report"). In the January 25, 2022 Report, Dr. Jarolem states he reviewed additional radiographic studies, *i.e.*, MRIs of the cervical and lumbar spine dated 10/10/19, that were previously unavailable. Upon his review of these records, Dr. Jarolem concluded "there are no changes to previously dictated opinions," and Plaintiff has "no permanent injury as a result of the accident on 8/6/19." *Id.*

In her Motion, Plaintiff seeks to exclude Dr. Jarolem's testimony under Federal Rules of Civil Procedure 26 and 37 due to issues with the timeliness and completeness of the reports. *See* ECF No. 29, at ¶ 7. Alternatively, Plaintiff seeks to exclude Dr. Jarolem's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702 on grounds, generally, that his opinions are unreliable because they are not supported by sufficient facts. *Id.* at 3–6.

### III.    APPLICABLE LEGAL STANDARDS

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993).

#### A.    *Rule 26(a)(2) Expert Witness Disclosure Requirements*

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any expert witness it may call upon at trial. Pursuant to Rule 26(a)(2)(B), if a witness is retained or specifically employed to provide expert testimony in a case, the disclosure must be accompanied by a written report—prepared and signed by the witness—and must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The expert disclosure requirements are "designed to allow opposing parties a reasonable opportunity to prepare effective cross examination and retain rebuttal experts." *Carter v. BPCL Mgmt., LLC*, No. 19-60887, 2021 WL 1338256, at *2 (S.D. Fla. Mar. 11, 2021) (citing *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1362 (11th Cir. 2008)).

In addition to these rigorous expert disclosure requirements, parties are required to supplement incomplete or incorrect Rule 26(a) disclosures. Fed. R. Civ. P. 26(e)(1); *see also Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) ("[Rules] 26(a) and (e) require parties to disclose all bases of their experts' opinions and to supplement timely their

8

expert disclosures upon discovery of an omission or as required by court order."). Furthermore, "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Here, pretrial disclosures are due April 23, 2022 (thirty days before trial).

### B.  Rule 37 And The Repercussions Of The Failure To Comply With Rule 26(a)(2)

When a party fails to properly disclose an expert witness or expert opinions as required by Rule 26(a)(2), the party may not use its proposed expert testimony on a motion, at a hearing, or at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Substantial justification requires "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request . . . [and] must have a reasonable basis in law and fact." *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051, 2012 WL 5199597, at *5 (S.D. Fla. Oct. 22, 2012).

A Rule 26(a) violation is considered harmful "when disclosure is made on or after the discovery deadline, such that it prevents the opposing party from rebutting the information with[out] delaying the schedule." *Carter*, 2021 WL 1338256, at *2 (citing *Lagardera v. Ocean Auto Ctr., Inc.*, No. 19-22108, 2020 WL 3315902, at *3 (S.D. Fla. Jan. 16, 2020) (finding disclosure on the eve of discovery deadline harmful because it deprived plaintiff of the opportunity to depose the expert, rebut his opinions, and conduct additional expert discovery)). On the other hand, "a belated disclosure is harmless if the opposing party has an opportunity to review the report and depose the expert before the discovery period ends." *Id.* at *3 (citations omitted).

Thus, even if a party failed to comply with the expert disclosure rules, exclusion of the non-complying party's witness is not automatic. The Court must determine whether exclusion is justified under Rule 37(c)(1). Fed. R. Civ. P. 37(c)(1). A court can "only strike an expert witness where the party failed to timely disclose a summary or report for that witness if the party had no substantial justification for its failure or the failure prejudices the opposing party." *Catalina Rental Apartments, Inc., v. Pacific Ins. Co.*, No. 06-20532, 2007 WL 1050634, *2 (S.D. Fla. Apr. 3, 2007) (citations omitted). Striking expert testimony is a "harsh sanction" that should "not normally be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* at *3 (quoting *Quinn v. Consolidated Freightways Corp. of Del.*, 283 F.3d 572, 576–77 (3rd Cir. 2002)).

"The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless." *O'Brien v. NCL (Bahamas) Ltd.*, No. 16-23284, 2017 WL 6949261, at *2 (S.D. Fla. Oct. 13, 2017) (citations omitted). If the party fails to show substantial justification or harmlessness, a district court "may impose other appropriate sanctions in addition to or in lieu of the evidentiary exclusion." *Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004). In determining whether exclusion of a witness is warranted, the court considers factors such as "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party if the witness had been allowed to testify." *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (cleaned up).

### C. The Admissibility Of Expert Testimony Under F.R.E. 702 And Daubert.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if: "(a) the expert's

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594–95 (1993)). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005).

In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *Frazier*, 387 F.3d at 1260. While some overlap exists among these requirements, the Court must analyze each one individually. *Id.*

11

**Qualifications**: An expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id.* So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id.*

**Reliability**: In determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262. This same criterion applies to both scientific opinions and experience-based testimony. *Id.* at 1261–62 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Even so, the Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire Co.*, 526 U.S. at 152.

**Helpfulness**: Expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify as to his opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Umana–Fowler*, 49 F.

Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

## IV.    DISCUSSION

With the foregoing in mind, the undersigned turns to the issue of whether Defendant's medical expert, Dr. Jarolem, should be permitted to testify and offer his opinions at the trial in this case. In making such determination, the undersigned first considers the timeliness and adequacy of Defendant's expert disclosures and opinions and then will address Plaintiff's challenges pursuant to *Daubert* and the Rules of Evidence.

### A.   *Timeliness of the Expert Disclosures and Opinions*.

As previously mentioned, Defendant's Expert Witness Disclosure [ECF No. 29-1] and Dr. Jarolem's first two of the five expert reports at issue were timely served by Defendant before the November 17, 2021, deadline for Rule 26(a) disclosures set by the Court's Scheduling Order. [ECF No. 29-2, at 4–12]. The three later served Supplemental Reports (the November 24, 2021; December 1, 2021; and January 25, 2022 Reports) were served after the court-imposed deadline. [ECF No. 29-2, at 1–3, 13–19; ECF No. 30-3].

Plaintiff argues that Dr. Jarolem's opinions should be excluded because they were untimely, and Plaintiff did not have the opportunity to depose Dr. Jarolem regarding new opinions given after his deposition. [ECF No. 29, at 2; ECF No. 31, at 2]. In the Response to Plaintiff's Motion, Defendant points out that the Scheduling Order does not set a deadline for providing *supplemental* expert reports and argues that its Supplemental Reports merely corrected or completed the Preliminary Reports rather than providing new opinions. [ECF No. 30, at ¶ 8]. Defendant further argues that the "additions/corrections" in the supplemental reports caused no surprise or prejudice to Plaintiff and were therefore harmless. [*Id.* ¶¶ 10–

13

11]. And, at the hearing, Defendant asserted that the delay in providing the Supplemental Reports was attributable to the fact that the records on which the Supplemental Reports were based were previously unavailable to Dr. Jarolem. Nonetheless, Defendant proffered it is not opposed to a second deposition of Dr. Jarolem to cure any potential prejudice to Plaintiff. *Id.* at 6. Defendant also points out that Plaintiff was on notice that Dr. Jarolem "may review additional records" and opine as to those records, as was stated in the November 16, 2021 Report. *Id.*

The undersigned finds that Defendant did provide new expert opinions after the Court-imposed deadline for expert witness disclosures. As detailed above, although Defendant timely provided an expert witness disclosure, [ECF No. 29-1], and two expert reports disclosing some of Dr. Jarolem's opinions (primarily opinions regarding the reasonableness of medical bills), [ECF No. 29-2, at 4–14], prior to the November 17, 2021 expert disclosures deadline, it was not until the November 24, 2021 Report, served seven days *after* the deadline, that Dr. Jarolem first provides his opinions regarding Plaintiff's injury and whether it was caused by the accident at issue. In the November 16, 2021 Report, the only opinions offered by Dr. Jarolem go to the reasonableness of Plaintiff's medical treatment and the costs for that treatment. *See* Section II, *supra*, at pp. 3–4. Later, in the November 24, 2021 Report, Dr. Jarolem provides opinions, for the first time, regarding Plaintiff's injury – *i.e.*, that Plaintiff has no permanent injury as a result of the accident on 8/6/19; no restrictions or further treatment needed as a result of the 8/6/19 accident; issues with Plaintiff's spine predate the 8/6/19 accident. *See* ECF No. 29-2, at 1–3. These new opinions were provided seven days after the expert disclosure cut-off, and Defendant failed to seek an enlargement of the expert disclosure cut-off before providing those opinions.

14

As also detailed above, Defendant later provided additional Supplemental Reports for Dr. Jarolem on December 1, 2021, and January 25, 2022. [ECF No. 29-2, at 13-19 and ECF No. 30-3]. However, a review of these Supplemental Reports reflects that no new opinions were provided. Instead, in those Reports, Dr. Jarolem reiterates his previous opinions, that Plaintiff's spinal issues predate the 8/6/19 accident, and the 8/6/19 accident did not cause her injuries and physical abnormalities seen in the x-rays and MRIs. And, in those later Reports, Dr. Jarolem indicates that he had the opportunity to review additional medical records that were previously unavailable and that, after review of these additional records, his opinions did not change. *See* ECF No. 30-3.

The undersigned finds that no new opinions were offered in the December 1, 2021 and January 25, 2022 Reports, and, therefore, the only late-disclosed opinions at issue were in the November 24, 2021 Report. Insofar as other supplemental information included in the Supplemental Reports, such as indications of additional records reviewed, the undersigned finds that these are not new opinions but supplemental information appropriately and timely disclosed pursuant to Defendant's duty to supplement expert disclosures as provided in Rule 26(a)(2)(E), which states that parties "must supplement these disclosures when required under Rule 26(e)." Rule 26(e) provides that such supplements must be disclosed by the time the party's pretrial disclosures are due, which, in this case, is April 23, 2022, and therefore, the supplemental information in the later Reports was timely.

Having found that Defendant's disclosure of expert opinions regarding Plaintiff's injuries and the causation of those injuries in the November 24, 2021 Report were untimely, the undersigned next turns to a consideration of whether the untimely disclosures were substantially justified and whether they were harmless.

**B.   Justification For The Untimely Disclosure Of Defendant's Expert Opinions**

Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *In re Denture Cream*, 2012 WL 5199597, at *5. Federal courts consistently admonish that the striking of expert testimony is a "harsh sanction" that should "not normally be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Catalina Rental Apartments*, 2007 WL 1050634, *3.

Defendant argues that the untimely disclosures of opinions is justified because those opinions are based on information and medical records that were not available to the expert prior to the expert disclosure deadline. Defendant also argues that all of the Supplemental Reports are just that, supplemental, such that they were not untimely because they were not due until April 23, 2022. *See* ECF No. 30, at 5–6. The undersigned rejects the latter argument. The November 24, 2021 Report was the first time Dr. Jarolem expressed any opinion regarding Plaintiff's injuries and whether they are causally related to the 8/6/19 accident. This was not just supplemental information but, instead, new and material opinions that should have been disclosed prior to the expert disclosure cut-off or for which Defendant should have sought an extension of that deadline.

Nevertheless, the undersigned finds that Defendant has demonstrated substantial justification for the untimely disclosure of the opinions stated in the November 24, 2021 Report. Defendant argued at the hearing before the undersigned that they requested the medical records from Plaintiff and directly from the providers but that the records were produced slowly, and Dr. Jarolem updated his reports as the records were made available to him. Dr. Jarolem does expressly state in each of his reports that he was waiting for additional medical records and, each time he provided new reports, he indicated that he reviewed

16

medical records that were previously unavailable. Moreover, Plaintiff does not dispute that she did not provide the records to Defendant, although Defendant did request them from her. Instead, Plaintiff argued that Defendant should have moved to compel the records from Plaintiff if it wanted them sooner. In short, no one's hands are entirely clean. Defendant should have sought an extension of the expert disclosure deadline based on the need for additional medical records and, at the latest, when it knew Dr. Jarolem had new opinions to offer. On the other hand, Plaintiff concedes she had records needed by Dr. Jarolem that she did not provide to Defendant after Defendant requested them in discovery. Ultimately, on this record, there is no showing of "willful deception" or "flagrant disregard" of the Court's Scheduling Order by Defendant, and, instead, it was not unreasonable for Defendant to believe that it could continue to supplement expert reports as medical records were made available to its expert.

Having found that the untimely disclosure of the opinions in the November 24, 2021 Report was justified, the undersigned turns to whether the late disclosures were prejudicial to Plaintiff.

### C. *The Harm to Plaintiff Resulting from the Untimely Expert Disclosures*

As discussed above, a Rule 26(a) violation is considered harmful when a disclosure made after the deadline "prevents the opposing party from rebutting the information with[out] delaying the schedule." *Carter*, 2021 WL 1338256, at *2. On the other hand, "a belated disclosure is harmless if the opposing party has an opportunity to review the report and depose the expert before the discovery period ends." *Id.* at *3 (citations omitted). The undersigned has already determined that the only opinions disclosed after the Court's expert disclosure deadline are those contained in the November 24, 2021 Report. The information in the later

Supplemental Reports did not disclose new opinions and did not change the opinions disclosed in the November 24, 2021 Report.

The November 24, 2021 Report was provided to Plaintiff one week before Dr. Jarolem's deposition. Plaintiff does not complain that she did not have sufficient time to prepare to depose Dr. Jarolem regarding the opinions offered in the November 24, 2021 Report. Nor does Plaintiff complain that she did not have the opportunity to rebut the information in the November 24, 2021 Report. Although Defendant offered to make Dr. Jarolem available for additional deposition testimony, an offer regarding which the undersigned also inquired of Plaintiff's counsel at the hearing, Plaintiff has declined the offer. And Plaintiff did not seek an extension of the disclosure deadlines in order to offer rebuttal expert opinions. Thus, Plaintiff does not dispute that she had the opportunity to review the opinions in the November 24, 2021 Report and depose the expert before the end of the discovery period.

When queried by the undersigned at the hearing, Plaintiff could not articulate any actual prejudice to her ability to prepare her case for trial or to prepare for cross examination of Defendant's expert. Plaintiff's counsel expressed the concern that Plaintiff may have lost some tactical advantages due to the expert's review of records after the deposition. The undersigned finds that despite the potential loss of some alleged tactical or strategic advantages from Defendant's expert having continued to review records after his deposition, Plaintiff has not demonstrated prejudice or harm that warrants the harsh remedy of striking an expert witness. Plaintiff was able to prepare for Dr. Jarolem's deposition and has ample time to prepare for his cross-examination, including time to review and prepare for cross examination regarding Dr. Jarolem's later Supplemental Reports. Therefore, the untimely

18

disclosure of Dr. Jarolem's expert opinions one week after the expert disclosure deadline and one week before his deposition was harmless.

Accordingly, the undersigned finds that the Dr. Jarolem's testimony should not be excluded based on untimeliness under Federal Rule of Civil Procedure 26. The undersigned next turns to whether Dr. Jarolem's testimony should be excluded pursuant to *Daubert* and Federal Rule of Evidence 702.

### D.  *The Admissibility of Dr. Jarolem's Opinions*

As explained above, in determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise. *City of Tuscaloosa*, 158 F.3d at 562. These requirements are referred to as the "qualifications," "reliability," and "helpfulness" prongs, and a testifying expert must satisfy all three. *Frazier*, 387 F.3d at 1260.

Plaintiff only challenges the reliability of Dr. Jarolem's testimony. A review of the record reflects that Dr. Jarolem is an experienced spinal surgeon who appears qualified to testify competently regarding Plaintiff's spinal injuries, and such medical expert testimony from a physician with such specialized knowledge is the type of testimony that assists juries to understand scientific evidence like medical reports and tests. Therefore, the undersigned turns to Plaintiff's challenge concerning the reliability of Dr. Jarolem's opinions.

Plaintiff argues that Dr. Jarolem's opinions are not reliable because they are not supported by facts. Plaintiff directs this argument to two categories of opinions offered by Dr.

Jarolem: (1) opinions regarding Plaintiff's injuries, and (2) opinions regarding the charges billed for Plaintiff's medical treatment.

As to Dr. Jarolem's opinions regarding Plaintiff's injuries, Plaintiff argues that Dr. Jarolem's reports reflect that he did not review the operative reports from the medical procedures in this case. *See* ECF No. 29, at 5. In his Preliminary Reports, Dr. Jarolem does indicate that he was requesting additional medical records and reports. *See* ECF No. 29-2, at 5 and 11. However, both of those reports reflect that Dr. Jarolem reviewed a litany of other medical records and reports prior to issuing those reports and refers to the information in those documents in his reports. *See id.* at 4–5 and 8–10. Moreover, in his November 24, 2021 Report, Dr. Jarolem states, at the outset, "Medical records and radiographic studies have arrived which are reviewed." ECF No. 29-2, at 1. Dr. Jarolem goes on to explain his review of those reports prior to stating his opinions. At the conclusion of his November 24, 2021 Report, Dr. Jarolem indicates that the only outstanding records he had not yet reviewed are two MRI scans dated October 10, 2019 that he was told were unavailable but that, if they become available, he would like to review "for completeness." *Id.* at 3. Dr. Jarolem did, however, have the opportunity to review the reports regarding those scans prior to issuance of his November 24, 2021 Report. *See id.* at 9. Finally, in his last Report, dated January 25, 2022, Dr. Jarolem states that he did finally have the opportunity to review the two previously unavailable MRI scans from October 10, 2019, and that based on his review of that additional information, "there are no changes to previously dictated opinions." ECF No. 30-3, at 1.

Based on a review of Dr. Jarolem's Reports, it appears, contrary to Plaintiff's assertions, that Dr. Jarolem in fact reviewed and relied on a substantial amount of medical records and reports in formulating his opinions. Therefore, Plaintiff's claim that Dr. Jarolem's medical opinions are based on "rank speculation and opinion stemming from a total absence

of facts[]" is contradicted by Dr. Jarolem's Reports. Accordingly, Plaintiff's argument that Dr. Jarolem's opinions regarding Plaintiff's injuries should be excluded as unreliable on the grounds they are lacking in supporting facts should be denied.

Insofar as Dr. Jarolem's opinion regarding Plaintiff's medical charges, Plaintiff argues that Dr. Jarolem did not provide information about research he conducted in order to determine that Plaintiff's medical charges are unreasonable. ECF No. 29, at 6. The undersigned agrees that Dr. Jarolem does not appear to have conducted thorough research beyond his own billing practices and experience in reaching his opinion that the charges for Plaintiff's treatment were unreasonable. However, this lack of additional research does not make Dr. Jarolem's opinions regarding the reasonableness of Plaintiff's medical charges unreliable. "Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *American Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumho Tire Co.*, 526 U.S. at 151). Indeed, for nonscientific expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. Therefore, a district court may decide that nonscientific expert testimony, such as opinions on medical charges, is reliable based "upon personal knowledge or experience." *Id.* at 150; *see also Amy ex rel. W.A. v. Carnival Corp.*, No. 18-20324, 2021 WL 6135126, at *3 (S.D. Fla. Dec. 3, 2021) (finding expert's testimony on medical costs reasonable because it was based on the expert's "personal knowledge and experience").

Here, the undersigned finds that Dr. Jarolem's opinions regarding the reasonableness of Plaintiff's medical bills, which opinions are based on Dr. Jarolem's knowledge and experience as a practitioner engaged in the same types of medical treatments, are reliable. Therefore, Plaintiff's argument that Dr. Jarolem's opinions regarding the charges billed for

Plaintiff's medical treatment should be excluded as unreliable on grounds they lack scientific evidentiary support should be denied.

## IV.    CONCLUSION

Accordingly, for all the reasons set forth above, the undersigned respectfully recommends that Plaintiff's Motion to Exclude Defendant's Expert, Dr. Kenneth Jarolem [ECF No. 29], should be **DENIED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Court Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 20th day of April 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE


cc:    The Honorable Marcia G. Cooke
       Counsel of Record