UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20861-COOKE/DAMIAN

ADEISLEM HERNANDEZ,

    Plaintiff,

vs.

WALMART STORES, INC.,

    Defendant.

_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 22]**

THIS CAUSE is before the Court on Defendant, Walmart Stores, Inc.'s ("Walmart"), Motion for Summary Judgment [ECF No. 22] (the "Motion"). This matter was referred to the undersigned for a Report and Recommendation by the Honorable Marcia G. Cooke, United States District Judge. [ECF No. 32]. *See* 28 U.S.C. § 636.

The undersigned has considered the Motion, the Response [ECF No. 24], and the Reply [ECF No. 25], as well as the documents submitted in support of the parties' filings, including Walmart's Statement of Material Facts [ECF No. 23] ("Walmart SMF"), the deposition transcripts of Plaintiff, Adeislem Hernandez ("Plaintiff") [ECF No. 23-2] ("Plaintiff's Depo"), and Mark Lungren ("Lungren"), the Walmart store manager at the time of the slip and fall incident [ECF No. 23-4] ("Lungren's Depo"), the photographs taken after the incident, and the pertinent portions of the record and all relevant authorities. For the following reasons, it is recommended that Walmart's Motion for Summary Judgment [ECF No. 22] be granted in part and denied in part.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

This negligence action arises from a slip-and-fall at a Walmart store in South Florida. On August 6, 2019, Plaintiff was a business invitee at Walmart's store located at 33501 South Dixie Highway in Florida City, Florida. *See* ECF No. 1-1, at 5–8 ("Complaint"), at ¶ 5. Plaintiff alleges that while walking in the store, she slipped and fell on an unknown, clear liquid substance on the floor, believed to be water, causing her to sustain serious and permanent injuries. *Id.* ¶ 7. The incident, which occurred in an aisle where the refrigerated coolers are located, was captured on closed-circuit television footage.[1]

In her deposition, Plaintiff testified that she did not see the liquid substance before falling but that, after she fell, she did notice the substance was "[c]lear like water." [Plaintiff's Depo, at 11]. Plaintiff does not know when the water was first on the floor at the store, the length of time it was on the floor prior to her fall, or whether any Walmart associate knew there was water on the floor in that area prior to the incident. *Id.* at 12. Plaintiff stated she believed the water was leaking from a cooler in the immediate area where she fell because she saw water leaking directly from the cooler. *Id.* at 11. She also stated there was a separate puddle of water leaking from the same cooler. *Id.* Finally, Plaintiff testified that the amount of water was approximately as much "as if a bottle of water had been spilled." *Id.*

Walmart Assistant Manager Mark Lungren's testimony regarding the water on the floor on the date of the incident was similar to and consistent with Plaintiff's testimony. Lungren reported to the incident area shortly after Plaintiff's fall and observed the liquid on

---

[1] Walmart's video surveillance of August 6, 2019, is referenced in its Statement of Material Facts as "Exhibit B," however, the actual video was not physically filed with the Clerk of Court. The undersigned notes that neither party argues that the video footage has any bearing on the issues raised in the Motion.

the floor where Plaintiff had fallen. Lungren described the liquid as a "clear liquid" that "looked like water" and did not appear dirty or have any cart marks through it. [Lungren's Depo, at 8–10]. Lungren testified that, after an inspection was done, it was determined that the liquid came from a cooler (which is also referred to as a "bunker") in the area where Plaintiff fell. *Id.* at 8. Lungren also testified that the cooler leak was fixed after the incident. *Id.* He could not, however, state when the subject cooler started leaking prior to Plaintiff's fall, and he had no knowledge of the subject cooler leaking or malfunctioning or of any Walmart associate receiving complaints about the leaking cooler prior to the incident. *Id.* at 10, 13.

Plaintiff filed a one-count Complaint for negligence against Walmart in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, in December 2020. *See generally* Complaint. Plaintiff's Complaint alleges that Walmart was negligent, generally, by (1) failing to maintain the floor of the premises in a reasonably safe condition and (2) failing to warn Plaintiff of the dangerous condition posed by the water on the floor. *Id.* at ¶ 10. On March 3, 2021, Walmart removed the action to this Court. [ECF No. 1]. On December 15, 2021, Walmart filed the instant Motion for Summary Judgment [ECF No. 22], accompanied by Walmart's Statement of Material Facts. [ECF No. 23]. The Motion is ripe, and this case is set for trial during the trial period beginning May 23, 2022. [ECF No. 6].

In the Motion, Walmart argues there is no record evidence that Walmart, or any of its associates, had actual or constructive notice of the liquid on the floor or a leak from the cooler prior to Plaintiff's fall. [Motion, at 3–7]. Specifically, Walmart asserts Plaintiff failed to present any evidence regarding: (1) the length of time the liquid was present on the floor prior

to the incident, (2) that any slip and fall incidents regularly occurred in the same area, or (3) that any prior incidents were caused by a leak from the subject cooler. *Id.*

Plaintiff filed a Response to the Motion on December 29, 2021. [ECF No. 24] ("Response"). Although Plaintiff identifies in her Response those paragraphs of Walmart's Statement of Material Facts with which she agrees [Response, at 2], Plaintiff did not file a "separate and contemporaneous" Statement of Material Facts as required by Southern District of Florida Local Rule 56.1(a)(1). Therefore, pursuant to Local Rule 56.1(c), the undersigned finds that the material facts in Walmart's Statement of Material Facts are deemed admitted. That is, although Plaintiff has not expressly admitted paragraphs 6–9, 13, 15, or 17–18 of Walmart's Statement of Material Facts, because she failed to controvert those facts in a responsive Statement of Material Facts, as required by Local Rule 56.1(a), facts contained in those paragraphs are deemed admitted for purposes of the Motion for Summary Judgment.

In her Response, Plaintiff argues Walmart had constructive notice of the dangerous condition on the floor prior to Plaintiff's slip and fall. [Response, at 6–7]. In support, Plaintiff points to the leaking cooler in the immediate area where she fell. Specifically, Plaintiff claims the water that pooled on the floor came from the leaking cooler which, according to a work order dated three weeks after Plaintiff's accident, had a dirty, clogged drain. *Id.* at 7. Plaintiff further points to photographs of the aisle floor, taken shortly after the incident, and argues that the photographs depict "obvious footprints and dirt in several different areas on the floor." *Id.* Plaintiff argues this is "evidence of the long-lasting problem of a leaking cooler" which "caused water to pool on the floor for so long that it was tracked all over" the floor and caused Plaintiff to slip and fall. *Id.* at 8–9.

4

In its Reply, Walmart asserts that Plaintiff is making impermissible inferences that are unsupported by the record to conclude that Walmart had constructive knowledge that the dangerous condition existed for such a length of time that it should have known of the condition, or that the condition occurred with regularity and was therefore foreseeable. [ECF No. 25, at 3–6]. Specifically, Walmart argues that Plaintiff makes two unsupported and impermissible inferences regarding the circumstantial evidence present on the date of the incident: (1) since the liquid appears to have come from the leaking cooler, the only explanation as to why the liquid was not in a contiguous puddle is that someone or something must have traversed through it and spread it around the area where Plaintiff ultimately fell; and (2) the leaking cooler must have been a long-lasting problem based on the work order dated August 30, 2019, approximately three weeks after Plaintiff's fall, showing the subject cooler had a dirty and clogged drain. *Id.*

## II.   APPLICABLE LEGAL STANDARDS

### A.  *Summary Judgment Standard*

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's

function is not himself [or herself] to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### B. Proving A Negligence Claim For A Slip-And-Fall In Florida

Under Florida law, a plaintiff alleging negligence must show four elements: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 277–78 (Fla. 3d DCA 2017) (quotation omitted). Business owners owe invitees a duty: "(1) to take ordinary and reasonable care to keep its premises reasonably safe for invitees[,] and (2) to warn of perils that were known or should have been known to the owner and of which the invitee could not discover." *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 428 (Fla. 2d DCA 2020) (quotation omitted).

"If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1) (2021). An injured person may prove constructive knowledge by presenting circumstantial evidence showing that the "dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition." *Id.* § 768.0755(1)(a). Constructive knowledge may also be proven by showing that the dangerous "condition occurred with regularity and was therefore foreseeable." *Id.* § 768.0755(1)(b).

"Section 768.0755 specifically places the burden on the plaintiff to prove that the business establishment had constructive knowledge of the hazard." *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. 4th DCA 2020). "While the plaintiff need not prove constructive knowledge at the summary judgment stage, if the defendant shows there are no disputed factual issues about its constructive knowledge the burden shifts to the plaintiff to offer counter-evidence sufficient to reveal a genuine issue." *Struck v. Wal-Mart Stores East, LP*, No. 21-11012, 2021 WL 5052557, at * 3 (11th Cir. Nov. 1, 2021). Additionally, the mere presence of a liquid on the floor is insufficient to establish constructive knowledge. *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011). Rather, "the record must contain additional facts to create a permissible inference regarding the amount of time the water had been on the floor." *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1013 (11th Cir. 2019).

If a plaintiff does not identify evidence to suggest the length of time that a liquid was on the floor or the frequency with which the dangerous condition occurred prior to the injury, there is no genuine dispute of material fact, and a defendant is entitled to summary judgment. *See id.*

## IV. DISCUSSION

With the foregoing in mind, the undersigned turns to determine whether Plaintiff has established that a genuine issue of material fact exists regarding whether Walmart had notice of the dangerous condition in its store, that is, the puddle of water on which Plaintiff slipped and fell or the foreseeability of such a condition.

### A. Actual Notice

Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition. *Palmer v. Wal-Mart Stores E., LP*, No. 20-61879, 2021 WL 6926413, at *3 (S.D. Fla. Nov. 30, 2021). In the Motion, Walmart argues that it had no actual notice of the water on the floor or of a leak from the cooler adjacent to the incident area prior to Plaintiff's fall. Walmart's Statement of Material Facts and referenced evidence support this argument. *See* Walmart SMF, at ¶ 17. In her Response, Plaintiff does not present any evidence or argument to dispute that Walmart lacked actual notice of the water or the leaking cooler prior to her fall. *See* ECF No. 24. Because there is an absence of a genuine dispute, the undersigned finds that Walmart is entitled to summary judgment as to Plaintiff's negligence claim to the extent it is based on Walmart's *actual* knowledge. Therefore, the undersigned turns to the issue of whether there is sufficient evidence demonstrating a genuine issue of material fact regarding whether Walmart had *constructive* knowledge under Florida law.

### B. Constructive Knowledge

Under Section 768.0755(1), to demonstrate constructive knowledge, Plaintiff must establish that the "dangerous condition existed for such a length of time that in the exercise of reasonable care the condition would have been known to the defendant" or that the condition occurred with regularity such that it was foreseeable. *Grimes v. Family Dollar Stores of Fla., Inc.*, 194 So. 3d 424, 427–28 (Fla. 3d DCA 2016). The mere presence of liquid on the floor, without additional evidence demonstrating Defendant's constructive knowledge of the dangerous condition, is not enough to survive summary judgment. "The law does not make a store responsible to every person who gets hurt while shopping." *Sanchez v. Sears, Roebuck &*

*Co.*, No. 14-23291, 2015 WL 6599696, a *3 (S.D. Fla. Oct. 30, 2015) (Cooke, J.). Thus, the Court must determine whether Plaintiff has presented sufficient evidence to create a genuine issue of fact regarding whether Walmart had constructive knowledge of the hazard. However, at this stage, the Court's function is not to weigh the evidence and determine the truth of the matter, that is, whether Plaintiff has proven that Walmart had constructive knowledge, but only to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

    1. <u>The Summary Judgment Record</u>

Review of the parties' submissions and supporting evidence reflects that the following facts are undisputed: on August 6, 2019, Plaintiff slipped and fell in Walmart's store [Walmart SMF, at ¶ 10]; Plaintiff did not see a substance on the floor prior to falling [*Id.* ¶ 11]; Plaintiff and Walmart Assistant Manager Mark Lungren both described the liquid on the floor where Plaintiff fell as "clear" and "like water" [*Id.* ¶¶ 14, 16; Plaintiff's Depo, at 11; Lungren's Depo, at 10]; the liquid on the floor where Plaintiff slipped came from the adjacent bunker or cooler [Plaintiff's Depo, at 11; Lungren's Depo, at 8]; the leaked water had formed a puddle next to the bunker that Plaintiff describes as approximately the amount of a bottle of water and Lungren described as approximately one and a half square feet [Plaintiff's Depo, at 11; Lungren's Depo, at 10]; neither party knows how long the water was there before Plaintiff's fall [Plaintiff's Depo, at 12; Lungren's Depo, at 10]; an inspection by Walmart revealed that the substance on which Plaintiff slipped was water that came from a drain on the bunker that was not properly functioning at the time [Lungren's Depo, at 8]; at least one other bunker in the same store had a leak prior to the leak at issue in this case [*Id.* at 9]; leaking bunkers is an issue that has occurred in at least four other locations of Walmart's stores where Lungren

worked [*Id*.]; and Walmart does not have staff assigned to regularly inspect for leaks and spills in areas like that where the leak at issue in this case occurred. [*Id*. at 6–7, 12].

The foregoing facts are based on deposition testimony of Plaintiff and Lungren submitted by the parties in support of their memoranda. In addition to the deposition testimony, the parties cite the above-referenced closed-circuit television video (CCTV) recording of the location during the time frame surrounding and during Plaintiff's fall [Walmart SMF, at 2], as well as still photographs taken of the scene shortly after her fall. [ECF No. 23-3; ECF No. 24-3]. In their summary judgment memoranda, the parties, through counsel, submit their own, very different interpretations of what they believe is depicted in the photographs insofar as the condition of the floor and liquid where Plaintiff fell. Plaintiff argues the photographs show "a variety of footprints through the liquid" and "obvious footprints and dirt in several different areas on the floor[,]" as well as water "in several different areas throughout the floor[.]" [Response, at 6–7]. Walmart, on the other hand, asserts that the photographs depict "a small puddle of clear liquid with no track marks, cart marks, or footprints." [Walmart SMF, at 4].

Based on a simple review of the photographs submitted by the parties, the undersigned finds that the photographs do clearly depict a sizeable puddle of clear liquid that extends out from under the bunker well into the tiles, adjacent to the bunker, on which customers walk. *See* Photograph in Walmart SMF, at 4. However, it cannot be said that they depict anything obvious about the condition of the water puddle(s) and surrounding floor and whether there are footprints or track marks. Neither party provides any witnesses to explain the photographs, but instead rely on counsel's interpretations. Such unsupported statements of counsel in a summary judgment filing are not evidence and cannot properly be considered as

record evidence to support or preclude summary judgment. *See, e.g.*, *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (noting "mere conclusions and unsupported factual allegations are legally insufficient" on summary judgment); *Bleers v. Wal-Mart Stores E., LP*, No. 19-cv-806, 2021 WL 2106531, at *3–4 (M.D. Fla. May 25, 2021) (rejecting movant's interpretation of a video where the video did not clearly depict the events the movant described); *Palmer*, 2021 WL 6926413, at *5 (same); *Schambeau Props., LP v. Waffle House, Inc.*, No. 11-0029, 2011 WL 6934817, at *6 n.16 (S.D. Ala. Dec. 30, 2011) ("Unsupported statements of counsel in a summary judgment brief are not evidence, and cannot properly be considered."). Thus, the undersigned finds that neither the photographs themselves nor counsel's arguments regarding the photographs support or preclude a finding that Walmart had constructive notice based on dirt or footprints or track marks in the area where Plaintiff slipped and fell.

    2. <u>Constructive Knowledge Based On Length Of Time The Condition Was Present</u>

Plaintiff argues that "there were several indications that the liquid was on the ground for a significant amount of time." Response, at 3. In support, Plaintiff relies on the above-discussed photographs. She first argues that the photographs show footprints and track marks, indicating the water had been there long enough for customers to walk through it and roll their shopping carts through it prior to her fall. *Id.* at 8–9. Plaintiff argues this circumstantial evidence supports a reasonable inference that the leaking cooler had "caused the water to pool on the floor for so long that it was tracked all over." *Id.* at 8–9.

Circumstantial evidence of the passage of time may include "dirt, scuffing, or tracks in a substance." *Id.* (quotation and citations omitted); *see also Hernandez v. Sam's E., Inc.*, No. 20-61648, 2021 WL 1647887, at *5 (S.D. Fla. Apr. 26, 2021) ("It is true that evidence of footprints or track marks *in* a liquid *may* tend to show that a substance was on the floor for a

11

duration of time sufficient to impute constructive knowledge." (emphasis in original)). Nevertheless, "courts have also found that the mere presence of footprints or marks, standing alone, may not constitute competent evidence tending to show the length of time that a substance has been on the floor." *Hernandez*, 2021 WL 1647887, at *5 (citing cases). Here, neither party presents evidence that there were footprints or tracks through the water or that the water was dirty. To the contrary, both parties testified the water was clear like water. Plaintiff testified only that she noticed after her fall that her own feet had left a mark on the tile, and Lungren testified that he did not observe any track marks and the water did not appear dirty. [Plaintiff's Depo, at 11; Lungren's Depo, at 9].

Plaintiff's only evidence of the alleged footprints or tracks through the water, then, consists of the photographs, discussed above, that were taken *after she fell*. As discussed above, the photographs do not clearly depict footprints or track marks and no witness provided testimony demonstrating that they in fact depict such marks. The undersigned finds Plaintiff has not provided sufficient (or any) evidence that the water was dirty or tracked through by shoes or shopping carts to support a reasonable inference that Walmart had constructive knowledge based on the length of time the water was on the floor. *See Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 930 (11th Cir. 2018) (quoting *Montgomery v. Fla. Jitney Jungle Stores, Inc.*, 281 So. 2d 302, 306 (Fla. 1973) (cleaned up)).

However, the undersigned finds that evidence demonstrating the size of the puddle and the source of the water, viewed in the light most favorable to the Plaintiff, are sufficient to support a reasonable inference that a dangerous condition existed for such a length of time that in the exercise of reasonable care the condition would have been known to Walmart. *See, e.g.*, *Espinoza v. Target Corp.*, 843 F. App'x 168, 172 (11th Cir. 2021) (noting "evidence as to

12

the specific source of the leak . . . would tend to show how long a dangerous condition was present"); *Erickson v. Carnival Cruise Lines, Inc.*, 649 So. 2d 942, 942–43 (Fla. 3d DCA 1995) (concluding "the source of the puddle (i.e. ceiling leak) as well as the size of the puddle were sufficient to create a jury question as to whether this hazardous condition existed for a sufficient period of time to charge [the defendant] with constructive notice and to invite corrective measures").

The photographs do clearly show a significant amount of water, consistent with Plaintiff's description that the puddle was approximately the amount of a bottle of water and Lungren's testimony that it was approximately one and a half square feet. And the undisputed evidence demonstrates that the water was leaking from the drain under the bunker, as opposed to spilled all at once, to form the large puddle. Thus, the record evidence regarding the source and size of the puddle does support the inference that the water was there (or the puddle formed) for such a length of time that Walmart should have noticed it.

Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether the dangerous condition (the puddle of water on the floor) had been there for a sufficient period of time to charge Walmart with constructive notice.

3. <u>Constructive Knowledge Based On Evidence The Dangerous Condition Occurred With Regularity</u>.

The undersigned also finds that when the facts and evidence are viewed in the light most favorable to Plaintiff, a reasonable inference can be drawn that the condition (water leaking from bunkers) occurred with sufficient regularity such that it was foreseeable.

Lungren's testimony that he was aware that another bunker in the same store and several (at least four) similar bunkers in other stores operated by Walmart had leaked water onto store floors on previous occasions is circumstantial evidence that the dangerous

condition that allegedly caused Plaintiff's injury occurred with regularity. [Lungren's Depo, at 9]. *See, e.g.*, *Doudeau v. Target Corp.*, 572 F. App'x 970, 972 (11th Cir. 2014) (per curiam) (finding an inference of constructive notice can arise from the store's history of wet floors in rainy conditions); *Castillo v. Dollar Tree Stores, Inc.*, No. 19-cv-21845, 2021 WL 917947, at *1–2 (S.D. Fla. Mar. 10, 2021) (finding a genuine issue of material fact where the record showed that defendant store "knew of the regularity of its leaking roof"). Therefore, the undersigned finds that Plaintiff has presented sufficient evidence of Walmart's history of leaking bunkers from which a reasonable inference can be drawn that the condition happened with sufficient regularity such that Walmart should have known of the condition.

Accordingly, Plaintiff has presented sufficient evidence to create a genuine issue of fact regarding whether Walmart had constructive knowledge of the dangerous condition, and Walmart's Motion for Summary Judgment should, therefore, be denied as to constructive knowledge.

## V.   RECOMMENDATION

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that Walmart's Motion for Summary Judgment [ECF No. 22] be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned recommends Walmart's Motion for Summary Judgment be granted as to Plaintiff's claim that Walmart had actual knowledge of the existence of a dangerous condition that allegedly caused Plaintiff's injury and that the Motion be denied as to Plaintiff's claim that Walmart should be charged with constructive knowledge of the existence of said dangerous condition.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable

Marcia G. Cooke, United States District Court Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 28th day of April 2022.

      _____
      MELISSA DAMIAN
      UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable Marcia G. Cooke
       Counsel of Record